1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   MELODY DENISE BROWN,          ) Case No. CV 14-4420-JPR
                                   )
12                  Plaintiff,     )
                                   )
13            vs.                  ) **MEMORANDUM OPINION AND ORDER**
                                   ) **AFFIRMING COMMISSIONER**
14   CAROLYN W. COLVIN, Acting     )
     Commissioner of Social        )
15   Security,                     )
                                   )
16                  Defendant.     )
                                   )
17   ─────────────────────────────

18   **I.    PROCEEDINGS**

19        Plaintiff seeks review of the Commissioner's final decision

20   denying her application for Social Security disability insurance

21   benefits ("DIB") and supplemental security income benefits

22   ("SSI").  The parties consented to the jurisdiction of the

23   undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  This

24   matter is before the Court on the parties' Joint Stipulation,

25   filed March 19, 2015, which the Court has taken under submission

26   without oral argument.  For the reasons stated below, the

27   Commissioner's decision is affirmed.

28

                                  1

**II.   BACKGROUND**

Plaintiff was born on November 5, 1975.  (Administrative Record ("AR") 180.)  She completed two years of college and worked as a cashier, bus driver, parking-enforcement worker, sales representative, and loss-prevention worker.  (AR 25, 205.)

On September 14, 2010, Plaintiff submitted applications for DIB and SSI, alleging that she had been unable to work since August 27, 2007, because of neck, shoulder, and back injuries from an accident; knee and right-foot pain; and depression, anxiety, and bipolar disorder.  (AR 180, 184, 200, 204.)  After her applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge.  (AR 109.)  Plaintiff appeared at the hearing, on February 8, 2012, but it was continued so that a medical expert could evaluate her recent mental-health treatment.  (AR 82-84.)  Another hearing was held on May 16, 2012, at which Plaintiff, who was represented by counsel, testified, as did both a medical and a vocational expert.  (AR 36-79.)  In a written decision issued June 22, 2012, the ALJ found Plaintiff not disabled.  (AR 13-26.)  On April 7, 2014, the Appeals Council denied Plaintiff's request for review. (AR 4.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial

2

evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.  The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is

currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied.  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1  Id.

2       If that happens or if the claimant has no past relevant

3  work, the Commissioner then bears the burden of establishing that

4  the claimant is not disabled because she can perform other

5  substantial gainful work available in the national economy.

6  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257.

7  That determination comprises the fifth and final step in the

8  sequential analysis.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);

9  Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

10      B.   The ALJ's Application of the Five-Step Process

11      At step one, the ALJ found that Plaintiff had not engaged in

12  substantial gainful activity since August 27, 2007, the alleged

13  onset date.  (AR 15.)  At step two, he concluded that Plaintiff

14  had severe impairments of "status post a capsular repair of the

15  left shoulder," "2 mm disc bulging at C2-3, C3-4, C5-6, and C6-7

16  without any encroachment," "degenerative arthritis of the left

17  knee," "bipolar disorder," "past history of alcohol abuse," and

18  "ongoing abuse of prescription medications."  (AR 16.)  At step

19  three, the ALJ determined that Plaintiff's impairments did not

20  meet or equal any of the impairments in the Listing.  (Id.)  At

21  step four, he found that Plaintiff had the RFC to perform medium

22  work with additional physical and mental restrictions.  (Id.)

23  Her additional physical restrictions were that she could

24  occasionally perform postural activities, could not do above-

25  shoulder work with her left upper extremity, could occasionally

26  climb ropes, ladders, and scaffolds, and could not work around

27

28

heights or hazards.  (<u>Id.</u>)[2]  Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work.  (AR 24-25.)  At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy.  (AR 25.)  Accordingly, he found her not disabled.  (AR 26.)

**V.   DISCUSSION**

<u>The ALJ Properly Considered the Physicians' Findings and Opinions</u>

Plaintiff contends that the ALJ erred in assessing the findings and opinions of treating physicians Rick Pospisil and Jos Santz, examining physician Haleh Safavi, and nonexamining state-agency physician Carmen Bird.  (J. Stip. at 4-12, 22-23.) For the reasons discussed below, remand is not warranted.

1.  <u>Applicable law</u>

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither.  <u>Lester</u>, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  <u>Id.</u>

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

_____

[2] Plaintiff does not challenge the ALJ's findings concerning her mental impairments and limitations.

6

1   If a treating physician's opinion is well supported by medically
2   acceptable clinical and laboratory diagnostic techniques and is
3   not inconsistent with the other substantial evidence in the
4   record, it should be given controlling weight.
5   §§ 404.1527(c)(2), 416.927(c)(2).  If a treating physician's
6   opinion is not given controlling weight, its weight is determined
7   by length of the treatment relationship, frequency of
8   examination, nature and extent of the treatment relationship,
9   amount of evidence supporting the opinion, consistency with the
10  record as a whole, the doctor's area of specialization, and other
11  factors.  §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

12      When a treating or examining physician's opinion is not
13  contradicted by other evidence in the record, it may be rejected
14  only for "clear and convincing" reasons.  See Carmickle v.
15  Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008)
16  (quoting Lester, 81 F.3d at 830-31).  When a treating or
17  examining physician's opinion is contradicted, the ALJ must
18  provide only "specific and legitimate reasons" for discounting
19  it.  Id.  The weight given an examining physician's opinion,
20  moreover, depends on whether it is consistent with the record and
21  accompanied by adequate explanation, among other things.
22  §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6).  These factors also
23  determine the weight afforded the opinions of nonexamining
24  physicians.  §§ 404.1527(e), 416.927(e).

25      2.  Relevant background

26      On August 23, 2007, while working as a bus driver, Plaintiff
27  was rear-ended and sustained injuries to her neck, upper back,
28  left upper extremities, and left lower extremities.  (See AR 331-

7

33.)   Starting on October 26, 2007, Dr. Pospisil, a board-certified orthopedic surgeon, treated Plaintiff as part of her worker's-compensation case.   (See AR 447-49.)   On January 11, 2008, after he performed a comprehensive evaluation and reviewed MRIs of Plaintiff's left shoulder and spine, Dr. Pospisil diagnosed cervical, thoracic, lumbar, and lumbosacral strain; left-shoulder impingement with an inferior labral tear; and bilateral epicondylitis.[3]   (AR 437.)   He prescribed physical therapy and antiinflammatory, antineuritic, and muscle-relaxing medication.   (AR 442, 456.)

On February 7, 2008, Plaintiff was involved in a car accident and sustained blunt abdominal trauma in several places, a broken nose, and a cut on her right eyebrow.   (AR 345.)   She was admitted to the emergency room at Huntington Memorial Hospital and had surgery to repair injuries to her colon, liver, and face.   (AR 345, 738-40.)   After she was stabilized, she was transferred to another hospital for acute rehabilitation and was discharged on February 24, 2008.   (See AR 345-64, 427.)

Plaintiff was treated by various physicians for her left shoulder, back, and knees after the 2008 accident.   On May 9, 2008, she had surgery to repair the labral tear in her left shoulder.   (AR 326, 334, 400.)   Plaintiff was given pain medication and physical therapy to treat her left shoulder after

---

[3] The labrum is the cartilage that lines the rim of the shoulder joint.   See Shoulder arthroscopy, MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/007206.htm (last updated Apr. 16, 2013).   Epicondylitis, also known as tennis elbow, is inflammation in the forearm muscles resulting from repetitive strain.   See Stedman's Medical Dictionary 573 (27th ed. 2000).

surgery, as well as her knee and lower-back pain.  (AR 389-91,
398, 487-91.)

Dr. Pospisil completed a "Permanent & Stationary Report" on
February 5, 2009.  (AR 331.)  As to Plaintiff's left shoulder, he
opined that she "should be precluded from use of arm repetitively
at or above the shoulder level, and no heavy lifting."  (AR 336.)
As to her neck, he opined that she "should be precluded from
repetitive motions, prolonged positioning, and heavy lifting."
(Id.)  He stated that Plaintiff "remain[ed] temporarily totally
disabled."  (AR 337.)

The ALJ gave "limited weight" to Dr. Pospisil's opinion
because it "was given in the worker's compensation context, which
is different from the Social Security program," and because
Plaintiff's neck limitations were "not adequately supported by
the record in light of the paucity of treatment in this area."
(AR 21.)

From September 2010 to April 2012, Plaintiff was treated by
various physicians at Crown City Rehabilitation Institute.  (See
AR 850-63, 1117-30, 1174-90.)  Dr. Santz first saw Plaintiff at
Crown City on November 1, 2011 (AR 1120), and treated her until
April 2012 (AR 1174).  On April 9, 2012, he completed a "Work
Abilities Report."[4]  (AR 1228.)  In it, he indicated that

_____

[4] At the May 16, 2012 hearing, Plaintiff's counsel gave the
ALJ a copy of this report.  (See AR 59-60.)  Although the report
was from Empire Specialists, counsel asserted that the physician
who signed it was the same person who treated Plaintiff at Crown
City, referred to variously by the parties as Settles, Santos,
Sanz, and Sautz.  (AR 59, 75-77.)

(continued...)

1  Plaintiff was "[a]ble to return to Modified duty" on April 9,
2  2012, and that she had the following physical restrictions: she
3  could not lift more than 10 pounds, push or pull, reach above
4  chest or overhead, or type for more than two hours.  (AR 1236.)
5  In the space next to the box entitled "Allow frequent stretch
6  breaks," which was unchecked, he wrote "10" and changed the
7  printed words to read "every minutes/Hours."  (Id.)  Although
8  Plaintiff's counsel interpreted this notation as indicating that
9  Plaintiff had to take a 10-minute break every hour (see AR 74),
10 it is unclear what Dr. Santz meant.  Dr. Santz also checked boxes
11 for "Standing," "Sitting," "Kneeling," "Squatting," and
12 "Bending," apparently indicating that Plaintiff had limitations
13 on her ability to perform those functions but without
14 specifically explaining what those limitations were.  (AR 1236.)

15      The ALJ gave "very limited weight" to Dr. Santz's April 9,
16 2012 opinion, finding that his "extreme limitations [were]
17 overbroad because there [was] little or no record suggesting that
18 [Plaintiff] [had] typing problems or sitting problems."  (AR 21.)
19 He noted that Dr. Santz's assessment was contradicted by his own
20 treatment notes, which showed that Plaintiff had motor strength
21 of five out of five in both lower extremities and normal
22 coordination.  (Id. (citing AR 1120-21).)  The ALJ also cited
23 evidence that Plaintiff's hands and elbows had a normal range of

24

25 ──────────────────
        [4] (...continued)
26      After the hearing, on May 24, 2012, Plaintiff's counsel
   submitted the report for inclusion in the record.  (AR 1227-28.)
27 On June 8, 2012, he submitted what appears to be the same
   document except with additional writing underneath the signature,
28 reading "Santz, Jos, MD."  (AR 1235-36.)

                                10

1  motion and no swelling.  (Id. (citing AR 840).)

2      Dr. Safavi, a board-certified internal-medicine physician,
3  performed a consultative examination of Plaintiff on January 7,
4  2011.  (AR 842.)  In Dr. Safavi's opinion, Plaintiff could lift
5  and carry 50 pounds occasionally and 25 pounds frequently.  (AR
6  841.)  She had no limitations on standing, walking, or sitting,
7  nor on doing activities requiring agility, like walking on uneven
8  terrain, climbing ladders, or working at heights.  (Id.)  With
9  her left upper extremity, Plaintiff could only "frequently" do
10 gross manipulation above shoulder level but did not have any
11 limitations on her ability to do fine manipulation.  (AR 842.)
12 She had no limitations on the use of her right upper extremity.
13 (Id.)  She also had no limitations on postural activities, such
14 as bending, crouching, kneeling, crawling, and stooping.  (Id.)

15     Dr. Bird, a state-agency physician, reviewed Plaintiff's
16 medical records and on March 9, 2011, completed a "Physical
17 Residual Functional Capacity Assessment."[5]  (AR 898.)  Dr. Bird
18 opined that Plaintiff could lift and carry 50 pounds occasionally
19 and 25 pounds frequently; stand, walk, or sit with normal breaks
20 for six hours in an eight-hour workday; and push or pull with
21 both lower and upper extremities without any limitations.  (AR
22 892.)  Plaintiff had no manipulative or postural limitations.
23 (AR 893-94.)

24     The ALJ gave "the most weight to and generally adopt[ed]"

25

26     [5] Dr. Bird's electronic signature includes a medical
   specialty code of 19, indicating internal medicine.  (AR 898);
27 see Program Operations Manual System (POMS) DI 24501.004, U.S.
   Soc. Sec. Admin. (May 5, 2015), http://policy.ssa.gov/poms.nsf/
28 lnx/0424501004.

Dr. Safavi's opinion because it was "most consistent with the record as a whole" and was "generally consistent" with Dr. Bird's opinion.  (AR 20.)

The ALJ found that Plaintiff had the RFC to perform medium work with various physical and mental restrictions, including that she could not "do above shoulder work with the left upper extremity" and could occasionally "perform postural activities," including climbing ropes, ladders, and scaffolds.  (AR 16.)

3.  <u>Analysis</u>

In determining Plaintiff's RFC, the ALJ essentially incorporated Dr. Pospisil's opinion regarding Plaintiff's left shoulder and arm, finding that she could not do above-shoulder work (<u>id.</u>), which was more arguably more restrictive (<u>see</u> <u>infra</u> p. 16) than Dr. Pospisil's opinion that "she should be precluded from use of [left] arm repetitively at or above the shoulder level" (AR 336).  To Dr. Pospisil's other assessments, however, the ALJ gave "limited weight."  (AR 21.)  As discussed below, because those assessments were contradicted by other evidence in the record, the ALJ needed to give only specific and legitimate reasons for discounting them, <u>see</u> <u>Carmickle</u>, 533 F.3d at 1164, which he did.

The ALJ gave limited weight to Dr. Pospisil's opinion regarding Plaintiff's neck — that "she should be precluded from repetitive motions, prolonged positioning, and heavy lifting" (AR 336) — because it was "not adequately supported by the record in light of the paucity of treatment in this area" (AR 21).  Indeed, although MRIs from November 2007 and January 2009 revealed two-millimeter disc bulging in her cervical spine (AR 334, 475),

12

Plaintiff's medical records from after February 5, 2009 — when
Dr. Pospisil completed his report — indicate that she rarely
complained about, much less was treated for, any neck pain.  For
example, from July 2009 to March 2010, Plaintiff did not complain
of any neck pain to her primary-care physicians at Crown City
Medical Group.  (AR 802 (on Oct. 7, 2009, complaining of back
pain), 801 (on Nov. 5, 2009, complaining of back pain), 799 (on
Dec. 10, 2009, complaining of left-knee pain).)  Plaintiff went
to Risser Orthopaedic Group from June 2010 to April 2011 but
complained only of pain in her left knee, right foot, and left
shoulder, not her neck.  (See AR 681-87, 930-35.)  Likewise, she
saw doctors at Crown City Rehabilitation Institute from September
2010 to January 2012 yet complained only of knee, foot, and
shoulder pain.  (AR 862 (on Sept. 15, 2010, complaining of knee
pain), 858 (on Nov. 8, 2010, complaining of knee pain), 856 (on
Nov. 29, 2010, complaining of foot pain), 1129 (on Mar. 21, 2011,
complaining of knee pain), 1127 (on May 16, 2011, complaining of
knee pain), 1123 (on Sept. 12, 2011, complaining of knee pain),
1120 (on Nov. 1, 2011, complaining of shoulder, knee, and lower-
back pain); see also AR 1196 (Dec. 19, 2011 MRI showing "mild
amount of degenerative spurring anteriorly at C5-C6 and C6-
C7").)[6]

     When Plaintiff did complain of neck pain for the first time
in three years, at Crown City Rehabilitation on January 9, 2012
(AR 1188), she was given a cervical-spine epidural injection, on

_____

     [6] In Plaintiff's November 2010 Function Report, she did not
list neck pain — or, indeed, anything relating to her neck —
among her many alleged impairments.  (AR 224.)

February 2 (AR 1183-84), which provided, in her own words, "75%
improvement" with no side effects (AR 1180).  And instead of
requesting further treatment, Plaintiff told Dr. Santz on
February 7, 2012, that she was "contented with that improvement"
and "[did] not want any epidurals at this time." (AR 1181.)
Indeed, on February 29 and April 3, 2012, she had her pain
medications refilled and had another left-knee injection, but she
did not receive any more treatment for her neck.  (AR 1174-78;
see also AR 51-52 (Plaintiff acknowledging at May 16, 2012
hearing that she had first "epidural shot" in neck "a couple of
months ago").)  Thus, the ALJ properly discounted Dr. Pospisil's
opinion regarding Plaintiff's neck limitations based on the lack
of evidence supporting it, see §§ 404.1527(c)(3), 416.927(c)(3),
and its inconsistency with the record, see §§ 404.1527(c)(4),
416.927(c)(4).[7]

The ALJ also properly gave limited weight to Dr. Pospisil's
opinion because it "was given in the worker's compensation
context, which is different from the Social Security program."
(AR 21); see Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104 (C.D.
Cal. 2002) ("Workers' compensation disability ratings are not
controlling in disability cases decided under the Social Security
Act, and the terms of art used in the California workers'

---

[7] Further, the ALJ found Plaintiff not credible (AR 24), a
finding she has not challenged on appeal.  Dr. Pospisil's neck
restrictions appeared to be based primarily on Plaintiff's
allegations of disabling pain.  See Tonapetyan v. Halter, 242
F.3d 1144, 1149 (9th Cir. 2001) (because record supported ALJ's
discounting of claimant's credibility, ALJ "was free to disregard
[examining physician's] opinion, which was premised on
[claimant's] subjective complaints").

1  compensation guidelines are not equivalent to Social Security
2  disability terminology."). In particular, the ALJ was entitled
3  to reject Dr. Pospisil's opinion that Plaintiff was "temporarily
4  totally disabled." See § 404.1527(d)(1) ("A statement by a
5  medical source that you are 'disabled' or 'unable to work' does
6  not mean that we will determine that you are disabled."); SSR
7  96-5p, 1996 WL 374183, at *5 (July 2, 1996) (treating-source
8  opinions that person is disabled or unable to work "can never be
9  entitled to controlling weight or given special significance").
10 Plaintiff complains that although an opinion rendered in a
11 worker's-compensation case is not binding on an ALJ, he still
12 must "evaluate" it. (J. Stip. at 8.) But the ALJ clearly did
13 so, incorporating for the most part Dr. Pospisil's restrictions
14 concerning Plaintiff's left arm and expressly rejecting the rest.

15     Similarly, Plaintiff asserts that the ALJ erred in ignoring
16 Dr. Pospisil's finding that she was precluded from using her left
17 arm "repetitively at or above the shoulder level." (J. Stip. at
18 9; see AR 336.) But as discussed, the ALJ's RFC finding as to
19 Plaintiff's left arm was consistent with or more restrictive than
20 that portion of Dr. Pospisil's opinion and therefore necessarily
21 encompassed it. The ALJ was not required to discuss evidence he
22 did not reject. See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th
23 Cir. 1984) (per curiam) (ALJ need not discuss all evidence
24 presented but must "explain why significant probative evidence
25 has been rejected" (internal quotation marks omitted)).

26     Plaintiff also asserts that the ALJ's finding that she
27 "cannot do above shoulder work" with her left arm (AR 16) was
28 inconsistent with his step-five finding, based on the VE's

15

testimony (AR 25-26), that she could perform other jobs because those jobs require frequent or constant reaching under the DOT (J. Stip. at 10); see DOT 919.687-014 (vehicle cleaner), available at 1991 WL 687897; DOT 784.685-014 (sewing-machine operator), available at 1991 WL 680973; DOT 209.687-026 (mail clerk), available at 1991 WL 671813. Plaintiff asserts that because reaching is defined in the DOT as "extending the hands and arms in any direction," SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985), it necessarily includes reaching above shoulder level with the left arm. (J. Stip. at 10.) As an initial matter, "reach" is not necessarily the same thing as "work," the word used by the ALJ. Indeed, ALJs certainly know how to preclude or limit "reaching" when that is what they mean. See, e.g., Yelovich v. Colvin, 532 F. App'x 700, 702 (9th Cir. 2013) (affirming ALJ's exclusion of reaching restriction from RFC and VE hypothetical); Elleteson v. Astrue, 319 F. App'x 621, 623 (9th Cir. 2009) (affirming ALJ's finding that claimant had "unlimited capacity to reach" (internal quotation marks omitted)). Viewed in light of the evidence as a whole, see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008), especially that Plaintiff was right-handed (AR 73-74), the ALJ most reasonably intended to find that Plaintiff was precluded from doing jobs that required performing maneuvers on a sustained basis above her left shoulder, not from ever reaching in an upward direction with her left arm. That interpretation is also consistent with Dr. Pospisil's finding that Plaintiff could sometimes use her left arm at or above her shoulder. (AR 336.)

Moreover, the fact that a job involves reaching does not

16

mean that the reaching is necessarily done with both arms. <u>See</u>
<u>Palomares v. Astrue</u>, 887 F. Supp. 2d 906, 920 (N.D. Cal. 2012)
(affirming ALJ because DOT does not require reaching with both
arms); <u>Landrum v. Colvin</u>, No. EDCV 12-02213-JEM, 2013 WL 3819675,
at *6 (C.D. Cal. July 23, 2013) (same and collecting cases); <u>cf.</u>
<u>Carey v. Apfel</u>, 230 F.3d 131, 146 (5th Cir. 2000) (DOT "does not
contain any requirement of bilateral fingering ability or
dexterity"). Indeed, the tasks listed in each position's DOT
description don't necessarily require above-shoulder reaching or
reaching with both arms. <u>See</u> DOT 919.687-014 (describing vehicle
cleaner's tasks as cleaning interiors of transportation vehicles
using broom, cloth, mop, vacuum cleaner, and whisk broom;
cleaning windows with water, cleansing compounds, and cloth or
chamois; cleaning exterior surfaces with steam-cleaning or
spraying equipment, brush, or sponge), <u>available at</u> 1991 WL
687897; DOT 784.685-014 (describing sewing-machine operator's
tasks as turning screw to position guide on bed of machine and
inserting hat brim into guide, under presser foot and needle),
<u>available at</u> 1991 WL 680973 & 1991 WL 645978; DOT 209.687-026
(describing mail clerk's tasks as opening and sealing envelopes
by hand or machine; stamping date and time of receipt on incoming
mail; sorting mail; readdressing undeliverable mail; and
examining outgoing mail), <u>available at</u> 1991 WL 671813. Thus, the
ALJ's left-arm restriction was not necessarily inconsistent with
the frequent- or constant-reaching demands of the jobs identified
in his step-five finding. <u>See</u> <u>Suarez v. Astrue</u>, No. ED CV 11-
1940-SP, 2012 WL 4848732, at *4 (C.D. Cal. Oct. 11, 2012)
(finding no conflict between DOT's reaching requirements and

17

1    ALJ's finding that claimant could not perform work with right arm

2    above shoulder because "DOT descriptions do not expressly require

3    reaching with both arms").

4        Plaintiff relies on Jordan v. Astrue, No. 09-CV-1559 MMA

5    (WMc), 2010 WL 2816234 (S.D. Cal. May 4, 2010), accepted by 2010

6    WL 2816233 (S.D. Cal. July 16, 2010) (J. Stip. at 23), but that

7    case is inapposite because there the ALJ found that the claimant

8    was limited to occasional overhead "reaching" with his right arm,

9    2010 WL 2816234, at *5, not "work." The court held that the ALJ

10   erred in failing to explain the apparent conflict between that

11   restriction and the constant- and frequent-reaching requirements

12   in the jobs he identified in step five.  Id.  As described above,

13   the ALJ's restriction on certain "work" with one arm does not

14   conflict with constant- and frequent-reaching demands.  In any

15   event, Jordan is not binding on this Court.

16       The ALJ properly gave "very limited weight" to Dr. Santz's

17   April 9, 2012 opinion because his "extreme limitations [were]

18   overbroad" and "little or no record suggest[ed] that [Plaintiff]

19   [had] typing problems or sitting problems."  (AR 21); see Batson

20   v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir.

21   2004) ("an ALJ may discredit treating physicians' opinions that

22   are conclusory, brief, and unsupported by the record as a whole

23   or by objective medical findings" (citation omitted)).  Indeed,

24   as the ALJ noted, Dr. Santz's own treatment notes indicated that

25   Plaintiff had motor strength of five out of five in both lower

26   extremities and normal coordination.  (AR 1120-21.)  Further, in

27   his January 7, 2011 notes, Dr. Santz stated that Plaintiff's

28   hands and elbows had a normal range of motion and no swelling.

18

(AR 840.)   No other doctor found any limitations on Plaintiff's ability to sit, type, or do any kind of fine manipulation.   Thus, the ALJ properly discounted Dr. Santz's opinion because his treatment notes failed to support or explain it and it was inconsistent with the other record evidence.   See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected when treatment notes "provide[d] no basis for the functional restrictions he opined should be imposed on [claimant]"); Batson, 359 F.3d at 1195 (ALJ may discredit treating physician's opinion that is unsupported by record as whole).[8]

As for Dr. Safavi's opinion, the ALJ was entitled to give "the most weight" to it because it was based on his own independent clinical findings.   See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that examining physician's "opinion alone constitutes substantial evidence, because it rests on his own independent examination of [claimant]"); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (opinion of nontreating source based on independent clinical findings may itself be substantial evidence).   The ALJ also properly gave the most weight to Dr. Safavi's opinion because it was "most consistent with the record as a whole" and was "generally consistent" with Dr. Bird's opinion, who had

---

[8] In any event, even Dr. Santz recognized that Plaintiff was not disabled, as he found that she could return to work as of April 2012, on "modified duty."   (AR 1236.)

19

reviewed Plaintiff's medical records.[9]   (AR 20; <u>see</u> AR 892-93

(Dr. Bird summarizing medical evidence supporting opinion)); <u>see</u>

<u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) ("The

opinions of non-treating or non-examining physicians may also

serve as substantial evidence when the opinions are consistent

with independent clinical findings or other evidence in the

record.").   For example, Dr. Safavi's opinion was consistent with

medical evidence showing that Plaintiff's knee and shoulder

impairments did not prevent her from working.   (<u>See, e.g.</u>, AR

471-72 (normal results from Dec. 27, 2007 nerve-conduction study

of both upper extremities), 681 (on Oct. 7, 2010, Plaintiff

complaining of left-knee pain but left knee exhibiting range of

motion of 120 degrees of flexion, negative McMurray's test,[10]

_____

   [9] Plaintiff contends that Dr. Safavi's opinion did not
constitute substantial evidence because he examined her only once
and did not review her records. (J. Stip. at 11.)   But the
relevant issue in evaluating an examining physician's opinion is
not whether he reviewed the claimant's medical records but
whether his opinion was consistent with those records.   <u>See</u>
§§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent
an opinion is with the record as a whole, the more weight we will
give to that opinion.").   Further, an examining physician has
always examined a claimant only once or twice.   <u>See</u> <u>Henderson v.</u>
<u>Astrue</u>, 634 F. Supp. 2d 1182, 1192 (E.D. Wash. 2009) (finding
that ALJ erred in implying that medical opinions based on one-
time examination should be rejected because, "[b]y definition, an
examining physician does not have an ongoing relationship with a
claimant").   In any event, the ALJ based his RFC finding not only
on Dr. Safavi's opinion but also his own "careful consideration
of the entire record."   (AR 16; <u>see</u> AR 16-20 (summarizing records
from October 2007 to April 2012).)   Indeed, his RFC finding was
more restrictive than Dr. Safavi's assessment.

   [10] McMurray's test is used to evaluate patients for tears in
the cartilage of the knee.   <u>See</u> <u>Meniscus Tears</u>, MedlinePlus,
http://www.nlm.nih.gov/medlineplus/ency/article/001071.htm (last
                                              (continued...)

"benign" patellar examination, and doctor diagnosing "left knee pain of unclear etiology"), 686 (on June 4, 2010, although Plaintiff walked with mild limp and complained of left-knee pain, left knee had range of motion of 130 degrees of flexion and x-ray was normal), 723-24 (on Aug. 4, 2010, Plaintiff complaining of right-foot pain but doctor noting that she could walk without difficulty and sat "comfortably, in no acute distress" during examination), 930 (on Apr. 7, 2011, Plaintiff's left shoulder was "stable," rotator-cuff strength was "intact," and she walked "without a limp"), 931-32 (on Jan. 18, 2011, Plaintiff complaining of left-shoulder pain but on Feb. 10, 2011, left shoulder exhibiting full range of motion on examination and MRI showing no evidence of rotator-cuff tear).)

Accordingly, Plaintiff is not entitled to remand.

---

[10] (...continued)
updated June 29, 2012).

21

**VI.   CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[11] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 19, 2015

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[11] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."